Document          Page 1 of 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | |
| ) | CASE NO. BK11-40147-TLS |
| ROBB LEE GRECKEL, ) | A11-4040-TLS |
| a.k.a. RLG CONSTRUCTION, ) | |
| fdba R & L ENTERPRISES, ) | CHAPTER 7 |
| ) | |
| Debtor(s). ) | |
| PLATTE VALLEY BANK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ROBB LEE GRECKEL, ) | |
| a.k.a. RLG CONSTRUCTION, ) | |
| fdba R & L ENTERPRISES, ) | |
| ) | |
| Defendant. ) | |

ORDER

This case came before the court for trial in North Platte, Nebraska, on April 11, 20012. Philip M. Kelly appeared for Platte Valley Bank, and Stacy C. Nossaman-Petitt appeared for Debtor. The parties were given time to submit written closing arguments, and the matter is now ready for decision.

Judgment will be entered in favor of Debtor.

Platte Valley Bank filed this adversary proceeding under 11 U.S.C. § 523(a)(2)(A) and (B), alleging that Debtor obtained financing and extensions of credit from the bank by use of false representations and materially false written statements concerning his financial condition.

The Bankruptcy Code prohibits the discharge of a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition[.]" 11 U.S.C. § 523(a)(2)(A). To establish fraud within the context of § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that: (1) the debtor made a representation; (2) the representation was made at a time when the debtor knew the representation was false; (3) the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained a loss as the proximate result of the representation having been made. *R & R Ready Mix v. Freier (In re Freier)*, 604 F.3d 583, 587 (8th Cir. 2010).

To except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that the debtor obtained money by (1) use of a statement in writing

that was materially false; (2) that pertained to his or his business's financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff. *Jacobus v. Binns (In re Binns)*, 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005); *Northland Nat'l Bank v. Lindsey (In re Lindsey)*, 443 B.R. 808, 813 (B.A.P. 8th Cir. 2011).

Debtor was a contractor and did business as RLG Construction and as R & L Enterprises. He obtained a $10,000 operating line of credit from the bank in May 2009. Debtor's personal financial statement, submitted in support of his loan application, listed the assets of RLG Construction at $30,000. The financial statement was completed by the bank's loan officer using figures obtained during discussions with Debtor. When the parties signed the promissory note, they also entered into several commercial security agreements giving the bank security interests in three vehicles and all equipment, inventory, accounts, and so forth. The bank filed its U.C.C. financing statements on Debtor and his two business entities with the Nebraska Secretary of State and perfected its security interest.

Debtor paid the loan as agreed and his financing was renewed. He provided updated financial information, including lists of assets and liabilities, to the bank each time he requested additional credit. In February 2010, the parties rolled the line of credit into a new note for $12,500. At the same time, Debtor executed another promissory note with the bank in the amount of $21,000 for working capital in connection with contracts with the State of Nebraska. Both notes were secured by security agreements and financing statements.

Debtor's February 2010 personal financial statement listed RLG Construction's assets at $47,204. Approximately $18,000 of that amount was attributable to tools, which he itemized at the bank's request. Some of those tools were purportedly owned by his father; Debtor had a "rent to own" contract with his father to pay $6,000 in installments of $50 per month to purchase certain tools and equipment. The bank was unaware of this arrangement at the time it made the loans and believed all of the tools were owned by Debtor and were collateral for the loans. At some point after the loans were made, Debtor's father repossessed the tools for non-payment.

When Debtor failed to pay the loans as agreed, the bank instituted replevin proceedings in November 2010 and obtained an order for delivery of three vehicles, a car trailer, and all of the debtor's equipment, inventory, accounts, chattel paper, general intangibles, deposit accounts, documents, instruments, investment property and letter of credit rights. The bank was able to repossess the vehicles, the trailer, and a cement screed, which the bank sold for a total value of $8,750. Debtor then filed this Chapter 7 case on January 22, 2011.

In this dischargeability action, the bank alleges that Debtor made two misrepresentations: he overstated the value of RLG Construction and he failed to disclose the liability to his father for the purchase of the tools. In response to the bank's argument that her misrepresented the ownership of the tools with the intention of inducing the bank to rely on that information in granting him a loan, Debtor asserts that he merely responded to the bank's request that he list the tools "in his possession." He considered them to be "his" tools because he was in the process of purchasing them, so he included them in his assets. He provided a list of those assets to the bank, so it knew what it was getting for collateral.

The bank is correct that Debtor did not disclose the debt owed to his father for the tools.

However, the debtor testified that he considered it irrelevant to the loan because it was simply an arrangement between him and his father. He did not consider it to be a formal liability, so he did not include it on his financial statement for the bank. Further, it is not at all clear that Debtor's father has a valid interest in the tools that would be prior to the bank's security interest.[1]

For discharge to be barred, a debtor must have acted with intent to deceive. A creditor may establish such intent by proving reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. *Fairfax State Sav. Bank v. McCleary (In re McCleary)*, 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002). Clearly, Debtor should have disclosed the obligation to his father. However, I do not believe he acted with an intent to deceive the bank. He testified that he believed he owned the tools and didn't think of his arrangement with his father to be a formal liability. Further, the value of his business was a number arrived at in discussions with the bank's loan officer who helped complete the financial statement. Other than the potential obligation to Debtor's father, the bank has not identified any misrepresentations. The evidence simply does not establish an intent to deceive.

Moreover, the evidence does not indicate the bank relied on any representations. Reasonable reliance is determined by looking at the totality of the circumstances. *First Nat'l Bank of Olathe v. Pontow (In re Pontow)*, 111 F.3d 604, 610 (8th Cir. 1997). While the bank officer testified that he would not have approved the loan or extension of credit had he known the debtor did not own all of the assets listed on the financial statements because the collateral for the loans would have been insufficient, it appears the bank actually relied more on its history with Debtor and his good performance on his previous loans. The bank had never appraised the business or inspected any of the collateral it accepted on the earlier loans, nor did it think Debtor's tax liens, negative credit history on other accounts and denial of credit by another bank warranted denial of his loan requests.

The evidence here does not support the elements of non-dischargeability of these debts under § 523(a)(2).

IT IS ORDERED: For the reasons stated above, separate judgment will be entered in favor of Debtor, discharging the debts at issue.

DATED:  May 18, 2012

                                                                  BY THE COURT:

                                                                  /s/ Thomas L. Saladino
                                                                  Chief Judge

---

[1] Despite apparent grounds to do so, the bank has not challenged whether the "Rent to Own" agreement is a true lease, a security agreement or simply a promise to pay.

Notice given by the Court to:
    Stacy C. Nossaman-Petitt
    *Philip Kelly
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.